UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) ) ) ) ) ) ) ) ) | CRIMINAL ACTION<br><br>NO. 16-CR-40036-TSH |
| v. |  |  |
| AMINA YOUNG, |  |  |
| **Defendant** |  |  |

## MEMORANDUM AND ORDER ON YOUNG'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS
### (Docket No. 176)

**February 2, 2018**

**HILLMAN, D.J.**

The Defendant, Amina Young, has moved this Court to suppress a cell phone, and its contents, seized from a motor vehicle in which she was a passenger on June 23, 2016. For the reasons stated herein, the Defendants motion to suppress is ***denied***.[1]

### Background

The DEA's Tactical Diversion Squad based in Worcester began conducting an Oxycodone distribution organization operating in Southbridge in August 2015. The initial target was John Tautenhan (Tautenhan), an individual from whom an undercover officer had purchased Oxycodone pills on multiple occasions from September 2015 through April 2016. On March 31,

---

[1] Counsel had also moved to suppress statements obtained from the defendant in violation of *Miranda* however, Defendant concedes that no incriminating statements were elicited, rendering that portion of the Motion to Suppress moot.

1

2016, interception of communications from a cellular phone of Tautenhan's was approved by the Court. From these interceptions, and additional information gathered during the investigation, Jennifer Toledo (Toledo) was identified as a regular source of Oxycodone for Tautenhan.

On April 16, 2016, a communication between Tautenhan and Toledo was intercepted which indicated that Toledo was meeting her Oxycodone source, a female, the following day. That following day, investigators followed Toledo, who was travelling with two female passengers, from Massachusetts to a Panera restaurant in the Cross County Mall in Yonkers, New York. Upon arrival, Toledo was observed meeting a black female.[2] Toledo and the black female both walked to the back of the Panera where the bathroom was located. Toledo entered the bathroom and the black female followed soon after. Minutes later the two females exited together, briefly spoke outside, and then separated. Toledo re-entered her vehicle and left the Cross Country Mall.

Further communication between Tautenhan and Toledo was intercepted on April 21st. It was learned that Toldeo had only received about one half of the number of pills she usually received from her source. Toledo subsequently sent a text to Tautenhan informing him that her source has just come through with additional pills.

On April 22, 2016, surveillance again followed Toledo from Massachusetts to New York. At some point, officers lost sight of Toledo but later spotted her vehicle in a parking lot at the Cross Country Mall in Yonkers. Officers observed Toledo walk out of a supermarket and enter her car. She was subsequently stopped by officers and 520 Oxycodone pills were seized. There were three females present in the car when it was stopped by the officers; Toledo was the driver.

---

[2] The black female was later identified as the defendant, Amina Young.

Officers seized 120 pills from the passenger sitting in the back seat, 300 pills from the passenger in the front seat, and 120 pills were found immediately outside the driver side door.

Toledo was brought to Yonkers police station where she was questioned by officers. She admitted to driving to New York for the purpose of purchasing Oxycodone pills from "Kim," which she admitted that she had done that day in the bathroom of the Marshalls at the Cross County Mall. Toledo also admitted that she had purchased 500 Oxycodone pills for $11,000 that day, and that she had purchased 300 Oxycodone pills from "Kim" the previous week.

DEA agents met with an unnamed cooperating witness (CW-1) who had purchased Oxycodone from "Kim" on multiple occasions in New York and Connecticut.[3] CW-1 told investigators that "Kim" was often driven by a black female named "Chontel" in a black BMW SUV with New York registration.

At the direction of investigators, CW-1 exchanged text messages with "Kim" from June 15, 2016 through June 23, 2016 discussing the purchase of up to 1,500 Oxycodone pills. "Kim" used the phone number (646) 591-8139. On June 23, 2016, "Kim" sent a text stating, "You want to wait till tomorrow I was only able to get a size 5 got to in the back in the am."[4] Kim and CW-1 agreed to meet that night at the Panera in Trumbull, Connecticut.

At 9:15 PM on June 23, 2016, officers conducting surveillance observed the Defendant arrive as a passenger in a black BMW X6 with New York registration. The vehicle was driven by a black female who was later identified as Chontee Eaton (Eaton). Together, the two women exited the vehicle and entered Panera. After Eaton entered the bathroom for a short period of time, she rejoined the Defendant and were approached by DEA agents. Both females were

---

[3] CW-1 identified the Defendant as "Kim" through Facebook.
[4] CW-1 explained this text meant that "Kim" only had 500 pills but would be able to obtain more if CW-1 could wait one additional day.

transported by law enforcement to the Trumbull Police Department where they were searched by a female officer. 478 Oxycodone pills were found in Eaton's bra. No illegal substances were found on the Defendant. The black BMW was towed to the Trumbull Police Station and was searched without a warrant and a cell phone was seized from the front passenger seat. On October 13, 2016, the Magistrate Judge issued a warrant authorizing the search of the cell phone seized from the BMW on June 23, 2016. The subsequent search of the cell phone revealed the text messages sent to "Kim" and received by CW-1 in the days prior to the Defendant's arrest. The Defendant is currently charged with conspiracy to possess with the intent to distribute and to distribute Oxycodone. She seeks to suppress the seizure of that phone.

## **Discussion**

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures." U.S. Const. Amend. IV. "Fourth Amendment rights are personal rights that may not be asserted vicariously." *Rakas v. Illinois*, 439 U.S. 128, 128, 99 S. Ct. 421, 423, 58 L. Ed. 2d 387 (1978). In order to assert the protections of the Fourth Amendment, the aggrieved person must establish that they had a reasonable expectation of privacy in the area searched. *United States v. Lochan*, 674 F.2d 960, 965 (1st Cir. 1982) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980)). Absent a reasonable expectation of privacy, "damaging evidence secured by a search of a third person's premises or property" is not a violation of the defendant's Fourth Amendment rights. *Id*. at 134 (internal citations omitted); *See,* e.g., *United States v. Symonevich*, 688 F.3d 12, 19 (1st Cir. 2012) (finding the passenger did not have standing to raise a Fourth Amendment challenge to the search of the vehicle in which he was travelling as a passenger).

The Defendant alleges that her Fourth Amendment rights were violated when officers searched the BMW and seized the cell phone located in the passenger area. Defendant relies on *Lochan* to argue that she had a reasonable expectation of privacy in the vehicle because she had been a passenger in the car during the trip from New York to Connecticut, had been a passenger on prior occasions, and she had left her cell phone locked inside the car. *United States v. Lochan,* 674 F.2d 960, 965 (1st Cir. 1982) (the "legitimate presence in the area searched, possession or ownership of the area searched or the property seized, prior use of the area searched or the property seized, ability to control or exclude others' use of the property, and a subjective expectation of privacy" are factors to be considered when analyzing a reasonable expectation of privacy.) While the court did recognize factors to consider in determining whether or not a reasonable expectation of privacy exists, it ultimately decided that although the arrestee had been driving the car at the time it was pulled over, was in possession of the vehicle's registration, and had been travelling in the car for a long period of time, the facts were not sufficient to establish an expectation of privacy in the vehicle. *Id*. Specifically, the court found that although a longer trip "would engender a slightly greater privacy expectation," the other factors outweighed this factor. *Id*.

The facts of the present case are less persuasive than those in *Lochan*. Defendant did not own or have a possessory right over the vehicle,[5] and she was not the driver of the vehicle on the day it was searched. Although the Defendant had been a passenger for a number of hours, had travelled in the car previously, and had left her cell phone locked in the vehicle, these facts are not sufficient to establish that she had a reasonable expectation of privacy in the vehicle. *See*

---

[5] Pursuant to further investigation, it was determined that the black BMW SUV was owned by the father of the female driver, Chontee Eaton.

*United States v. Symonevich*, 688 F.3d 12, 20-21 (1st Cir. 2012) (while the court did not "categorically reject[] the relevance of the duration of a trip in an automobile to the reasonable expectation of privacy analysis," it noted its skepticism in that factor and found that because of the circumstances, the duration of the trip "did nothing to enhance [defendant's] expectation of privacy"). Like the arrestee in *Symonevich,* the fact that the Defendant travelled in the vehicle for hours, without evidence to suggest that she had ownership or a possessory interest in the vehicle, does not establish a reasonable expectation of privacy. *Id*. Without a reasonable expectation of privacy, the Defendant lacks standing to challenge the warrantless search.

## Conclusion

For the reasons set forth above, the Defendants motion to suppress (Docket No. 176) is ***denied***.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**