# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | **CRIMINAL ACTION** |
| **v.** ) | **NO. 4:16-40036-TSH** |
| ) | |
| **AMINA YOUNG,** ) | |
| **Defendant.** ) | |

## AMENDED MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (Docket No. 281)

**May 15, 2020**

**HILLMAN, D.J.,**

Amina Young pled guilty to conspiracy to possess with intent to distribute oxycodone, and I sentenced her to thirty months' imprisonment. As of the date of this Order, she has served approximately twenty-three months of her thirty-month sentence and is scheduled to be released on December 31, 2020. She moves for compassionate release, citing the danger that COVID-19 poses to her health and safety given her medical conditions. (Docket No. 281). After conducting a hearing on her motion and considering counsels' arguments, I determine that Ms. Young has met her burden to show the existence of extraordinary circumstances warranting release under 18 U.S.C. § 3582(c)(1)(A). Her sentence is reduced to time served, and her period of supervised release is increased by four months. Her 40-month term of supervised release shall begin as of the date of this Order and, through September 15, 2020, she shall serve her term of supervised release on home incarceration at her apartment in New York. She shall further self-quarantine for the first fourteen days of her release. All other conditions of supervised release from her November 30, 2018, judgment shall remain in effect.

1

**Discussion**

Section 3582(c) begins with the general principle that a "court may not modify a term of imprisonment once it has been imposed . . . ." Upon motion of the Director of the Bureau of Prisons or a defendant,[1] however, a court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." *Id.* § 3582(c)(1)(A). Ms. Young argues that her medical conditions and the situation at FCI Danbury, where she is currently incarcerated, constitute extraordinary and compelling reasons justifying release. After considering the current and potential prospective impact of the pandemic together with an individualized assessment of relevant factors as they pertain to Ms. Young—(1) the defendant's age and health, including whether the defendant has any health conditions that place her at increased risk of serious illness or death from COVID-19; (2) the health, safety, and living conditions at the facility where the defendant is housed, any specific crowding issues, and the specific steps taken by the facility in response to the spread of COVID-19; and (3) the crime of conviction and length of the defendant's remaining sentence—I agree.

Ms. Young is 41 years old and suffers from asthma and obesity. The CDC warns that moderate to severe asthma and/or severe obesity increase the risk of serious illness or death if an individual contracts the virus. Ms. Young's medical records do not definitively establish that she

---

[1] I need not determine whether a defendant must exhaust her administrative remedies before filing a motion with this Court because Ms. Young has exhausted her administrative remedies. The Bureau of Prisons denied her motion for compassionate release on May 8. (Docket No. 289-2 at 1).

falls within either category. (Docket No. 289 at 3). Instead, her records indicate that she suffers from "unspecified asthma, uncomplicated," without any indication of the severity of her condition, and that her BMI is 38.3, i.e., below 40, the threshold for severe obesity. (Docket No. 281-1 at 1–4). According to Ms. Young, however, her asthma has recently become more severe as a result of mold in her unit, and she has had a flare-up of symptoms that has not been adequately treated by medical personnel at the prison. (Docket Nos. 281 at 3, 289-1 at 1). Ms. Young also offers evidence that her weight has increased since her last physical at FCI Danbury, causing her BMI to be 39.5 rather than the 38.3 listed in her records. (Docket No. 291-1 at 12). Thus, there is some indication that Ms. Young is at heightened risk of serious illness or death if she contracts the virus.

Under these circumstances, moreover, I cannot say that continued incarceration at FCI Danbury does not place vulnerable individuals like Ms. Young at significant risk of exposure to the virus. As Judge Shea in the District of Connecticut recently summarized,

> Since the pandemic began, sixty-nine inmates at FCI Danbury have tested positive, out of an inmate population of approximately 1,000. But this figure may well understate the true number of COVID-19 cases at FCI Danbury, in light of the limited testing that has been conducted. One inmate has died since the crisis began. In fact, FCI Danbury was one of only three federal prisons specifically identified by Attorney General William Barr in an April 3, 2020 memo to the Director of the Bureau Prisons ordering immediate action to place vulnerable inmates on home confinement. In the memo, Attorney General Barr noted the "significant levels of infection" at FCI Danbury, along with FCI Oakdale and FCI Elkton.

*Martinez-Brooks v. Easter*, No. 20-00569, 2020 WL 2405350, at *4 (D. Conn. May 12, 2020) (internal citations omitted). Although the Government argues that FCI Danbury has undertaken extensive measures to protect its inmates since issuance of the Attorney General's memo (Docket No. 289 at 2, 4), I find it significant that, a mere three days ago, Judge Shea granted a Temporary Restraining Order against the prison. With the benefit of a much more fulsome record than is before this Court, Judge Shea determined that the prisoners had "made a preliminary showing that

officials at FCI Danbury are making only limited use of their home confinement authority, as well as other tools at their disposal to protect inmates during the outbreak, and that these failures amount to deliberate indifference to a substantial risk of serious harm to inmates in violation of the Eighth Amendment," *Martinez-Brooks*, 2020 WL 2405350, at *1.  And while the Government emphasizes that the women's camp, specifically, does not report any cases (Docket No. 289 at 4), two of the moving plaintiffs in *Martinez-Brooks* are located within the women's camp, so Judge Shea's finding as to FCI Danbury's limited efforts to contain the virus presumably extend to this area of the facility.  And in any event, other areas within FCI Danbury have been hit particularly hard with outbreaks of COVID-19, and Ms. Young alleges that staff members at the prison frequently move among these areas and the women's camp.  (Docket No. 281 at 3).  As the virus can appear suddenly and spread quickly in the prison population, I cannot find that Ms. Young's risk of exposure is insignificant.

I also find it significant that Ms. Young was convicted of a nonviolent drug offense, only has seven months left to serve on her thirty-month sentence,[2] and complied with all Court-imposed conditions prior to her incarceration.   She does not appear to pose any danger to the public if released.  Her release at this juncture is therefore consistent with the § 3553(a) factors.

In sum, I find that, under the particular circumstances as they exist in this case, Ms. Young has shown extraordinary and compelling reasons warranting her release under § 3851(c)(1)(A).  Accordingly, I ***grant*** her motion for compassionate release.

---

[2]    And likely only one month at FCI Danbury.  The parties expect that, if her motion for compassionate release is denied, Ms. Young will be transferred to a halfway house in New York City in June

**Conclusion**

For the reasons explained above, I ***grant*** Defendant's motion for compassionate release. (Docket No. 281). Her sentence is reduced to time served, and her period of supervised release is increased by four months. Her 40-month term of supervised release shall begin on the date of this Order and, until September 15, 2020, she shall serve her term of supervised release on home incarceration at her apartment in New York. Ms. Young shall additionally self-quarantine for the first fourteen days after her release. In furtherance of these conditions, the Court ORDERS that:

1. The defendant shall be subject to home incarceration, to be enforced by GPS Monitoring at the residence approved by probation for a period of four (4) months.

2. In light of the COVID-19 pandemic, the defendant must remain at her approved residence except to seek any necessary medical treatment, in each instance with prior notice and approval by the Probation Department.

3. The defendant is to possess or have access to a telephone that will allow video conferencing by the Probation Department.

4. Ms. Young is to report to the Probation Department at 500 Pearl Street, 6th floor, on June 1, 2020 at 11:00 AM (following 14 days of self-quarantine) to have the GPS tracker affixed to her ankle.

All other conditions of supervised release from her November 30, 2018, judgment shall remain in effect.

**SO ORDERED**

                                                */s/ Timothy S. Hillman*
                                                **TIMOTHY S. HILLMAN**
                                                **DISTRICT JUDGE**